UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 98-4672
(CR-98-86)

———————————

United States of America,

Plaintiff - Appellee,

versus

Terence Earl Davis,

Defendant - Appellant.

———————————

O R D E R

———————————

The court amends its opinion filed January 6, 2000, as follows:

On page 6, first full paragraph, lines 1 and 5; footnote 5, line 7 -- the reference to United States v. Jones is corrected to read Jones v. United States.

On page 7, second full paragraph, lines 4 and 7 -- the reference to United States v. Neder is corrected to read Neder v. United States.

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 98-4672

TERENCE EARL DAVIS,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CR-98-86)

Argued: May 18, 1999

Decided: January 6, 2000

Before MICHAEL, MOTZ, and KING, Circuit Judges.

_____

Affirmed by published opinion. Judge King wrote the opinion, in
which Judge Motz concurred. Judge Michael wrote an opinion dis-
senting in part.

_____

**COUNSEL**

**ARGUED:** Stephen Anthony Coren, Arlington, Virginia, for Appel-
lant. Charles Philip Rosenberg, Assistant United States Attorney,
Alexandria, Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey,
United States Attorney, Patricia M. Haynes, Assistant United States
Attorney, Alexandria, Virginia, for Appellee.

_____

**OPINION**

KING, Circuit Judge:

Terence Earl Davis appeals from his convictions and 170-month sentence in the Eastern District of Virginia on various offenses, including drug conspiracy, criminal property damage, assault, and firearm violations. These charges arose in connection with a failed drug transaction that resulted in gunshots being fired into an occupied dwelling on a military base. We possess jurisdiction pursuant to 28 U.S.C. § 1291.

The issues in this appeal relate only to Counts Eight and Nine of the indictment against Davis.[1] His conviction on Count Eight drove the sentencing, and resulted in a base offense level two points higher than the base offense level for three other counts on which he was convicted and that were grouped together with Count Eight. See USSG § 3D1.1. Based on Davis's criminal history category of III and the ranges in the Sentencing Table, a two-point decrease in the offense level generally corresponds to approximately twenty fewer

_____

[1] Based on charges in an April 7, 1998 indictment, Davis was convicted by a jury on June 4, 1998, on seven counts of the ten count indictment, as follows:

> a) Count One -- conspiracy to possess with intent to distribute marijuana, 21 U.S.C. § 846 and § 841(a)(1) and § 841(b)(1)(D);
>
> b) Count Two -- making false statements to a firearms dealer, 18 U.S.C. § 922(a)(6);
>
> c) Count Three -- possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1) and § 924(a)(2);
>
> d) Count Four -- possession of ammunition by a convicted felon, 18 U.S.C. § 922(g)(1) and § 924(a)(2);
>
> e) Count Eight -- destruction of a dwelling, 18 U.S.C. § 1363;
>
> f) Count Nine -- assault with a deadly weapon, 18 U.S.C. § 113(a)(3); and
>
> g) Count Ten -- use of a firearm in a crime of violence, 18 U.S.C. § 924(c).

2

months of imprisonment. Accordingly, the potential import of Davis's appeal on his Count Eight sentence is an imprisonment period of approximately twenty months.

We address four issues in connection with Davis's appeal. First, Davis asserts that the evidence was insufficient to convict him of the offense charged in Count Nine, assault with a deadly weapon under 18 U.S.C. § 113(a)(3). Second, we consider whether reversible error occurred in connection with the jury instructions on Count Eight. Third, Davis claims that the district court incorrectly applied § 2K1.4 of the U.S. Sentencing Guidelines ("Guidelines" or "USSG") with regard to Count Eight (destruction of dwelling property), because "shooting" a firearm does not involve "use of explosives." Fourth, Davis asserts that his sentence on Count Eight was improperly enhanced based on a finding that he engaged in witness tampering. Finding no reversible error on any of these issues, we affirm Davis's convictions and sentence.

I.

On December 22, 1997, as part of his drug activities, Davis asked his girlfriend, Jennifer Davis, and another friend, Tony Brown, to buy a half-pound of marijuana for him. This transaction was arranged for Davis by intermediaries, who knew both Davis and his suppliers. After his girlfriend advised Davis that the transaction had soured, and that his money had been stolen, Davis went to Brown's home. According to Brown, Davis believed that one or both of the drug deal's intermediaries had double-crossed him and were involved in the theft of his money. On that occasion, Brown witnessed a .380 caliber pistol in Davis's possession.

Davis and Brown thereafter picked up another friend, Tyree Wallace, and engaged Wallace to assist in Davis's effort to extract revenge on the money thieves. At the time, Wallace also possessed a firearm, a .25 caliber pistol. The three men purchased both .25 and .380 caliber ammunition.

After midnight on December 23, 1997, Davis, Brown, and Wallace went to the home of Brian McCoy, one of the intermediaries to the soured drug deal. McCoy resided in a dwelling on the Fort Belvoir

3

army post in northern Virginia, with his stepfather, mother, and four young half-siblings. Brown testified that, on that occasion, Davis and Wallace fired approximately fifteen rounds of ammunition into McCoy's dwelling at Fort Belvoir. McCoy was not at home, but his other six family members occupied the dwelling at the time of the shooting. No one was physically injured by the gunshots.

During the investigation of this shooting incident, a .380 cartridge, as well as both .25 and .380 caliber bullets and cartridge cases, were found at the scene of the shooting. When investigators later searched the room where Davis and his girlfriend lived, they located and seized drug paraphernalia and ten rounds of .380 caliber bullets. At trial, an FBI expert testified that markings on the .380 cartridge cases found at the crime scene were consistent with markings from a Grendel model P-10, matched those on the .380 cartridges seized from Davis's room, and that these markings are unique to each firearm.

No pistol or weapon was ever recovered, but three witnesses testified they had seen Davis in possession of a .380 caliber pistol during the two-month period prior to the shooting incident. In addition, one witness testified that he had purchased a .380 caliber pistol on behalf of Davis two months before the shooting, and acknowledged falsifying the required government form. A pawn shop clerk corroborated this evidence.

II.

Davis's first claim on appeal is that there was insufficient evidence before the jury to convict him of the charge in Count Nine.[2] A violation of § 113(a)(3) of Title 18, as charged in Count Nine, requires proof that the defendant committed an "assault with a dangerous weapon, with intent to do bodily harm, . . . without just cause or

_____

[2] In Count Nine, the indictment charged Davis as follows:

> did unlawfully, knowingly and intentionally assault the occupants of a dwelling on the grounds of Ft. Belvoir, with a dangerous weapon, that is, a Grendel, Model P-10, .380 caliber pistol, with the intent to do bodily harm.

J.A. 23.

4

excuse." 18 U.S.C. § 113(a)(3). When assessing on direct review the sufficiency of the evidence supporting a criminal conviction, "[t]he verdict of [the] jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942); see also United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997). The facts underlying this offense are summarized in Section I, supra, and demonstrate that Davis knowingly and intentionally assaulted six members of the McCoy family in their dwelling at Fort Belvoir. Taking the view most favorable to the Government, this assault was with a dangerous weapon, and was carried out with the intent to do bodily harm. Therefore, applying the appropriate standard of review, we conclude that there is more than sufficient evidence in the record to support the conviction of Davis on Count Nine.**3**

III.

In Count Eight, Davis was charged and convicted of violating 18 U.S.C. § 1363, which criminalizes the destruction of certain property. Under this statute, an increased penalty is provided for if the property is a dwelling, or if the life of any person is placed in jeopardy (the statutory aggravating facts). The statute provides:

> Whoever . . . willfully and maliciously destroys or injures or attempts to destroy or injure any structure, conveyance, or other real or personal property, shall be fined under this title or imprisoned not more than five years, or both, and if the building be a dwelling, or the life of any person be placed in jeopardy, shall be fined under this title or imprisoned not more than twenty years, or both.

_____

**3** Davis also asserts that the Government failed to prove that the type of handgun used in the shooting was a Grendel P-10 .380, as alleged in the indictment. To the contrary, the evidence sufficiently established that this type of handgun was used in the shooting. Even if it did not, however, a non-prejudicial variance between the indictment and the proof that does not modify the elements of the charged offense is no basis to invalidate a conviction. See United States v. Odom, 736 F.2d 104, 118 (4th Cir. 1984). There is no claim of prejudice made here, and none could be seriously asserted.

18 U.S.C. § 1363 (emphasis added).**4** Although Davis was charged in Count Eight with having committed the statutory aggravating facts, the jury was not properly instructed on the issue as an element of the § 1363 offense, and it did not explicitly decide either (a) whether the building was a dwelling or (b) whether Davis's conduct placed the life of any person in jeopardy.**5** We must therefore address whether the lack of a proper instruction constitutes plain error that undermines the conviction of Davis on Count Eight.

Of significance, in Jones v. United States, the Supreme Court recently considered a similar issue in connection with the federal car-jacking statute, which, like § 1363, explicitly provides for substantially increased punishment in the presence of certain statutory aggravating facts. See Jones v. United States, 119 S. Ct. 1215, 1228 (1999) (construing 18 U.S.C. § 2119). In Jones, the Court held that the § 2119 aggravating facts constitute offense elements, requiring submission to the jury with appropriate instruction, and also requiring proof by the government beyond a reasonable doubt. Id. As a result, these statutory aggravating facts are not merely factors for sentencing consideration, requiring proof to the satisfaction of the sentencing

_____

**4** In Count Eight, the indictment charged that Davis:

> did unlawfully, willfully and maliciously destroy and injure and attempt to destroy and injure a structure and real and personal property; that is, a dwelling . . ., thereby placing in jeopardy the lives of the people present in the dwelling at the time of the shooting.

J.A. 22.

**5** No objection was made on this point. We may exercise our discretion to correct an error that was not raised at trial only if: (1) error is found; (2) it is plain; (3) it affects substantial rights; and (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings. See Johnson v. United States, 520 U.S. 461, 466-67 (1997). This issue arises because, during the pendency of this appeal, the Supreme Court decided Jones v. United States, 119 S. Ct. 1215 (1999), and Neder v. United States, 119 S. Ct. 1827 (1999). These decisions apply to Davis's pending case. See Johnson, 520 U.S. at 466. Although it may not have been obvious at the time of Davis's trial, the instruction error that we decide today is now, in light of Jones, "plain," and therefore satisfied the first two plain error requirements. See Johnson, 520 U.S. at 468.

6

judge by a preponderance of the evidence. See id.; accord, United States v. Davis, 184 F.3d 366 (4th Cir. 1999).

In this case, the Government does not dispute the assertion that Davis's jury, pursuant to the Jones decision, should have been properly instructed on the statutory aggravating facts provisions of § 1363, as an element to support enhanced punishment for the offense (i.e., twenty years instead of five years). In accord with the Court's construction of the carjacking statute in Jones, we must construe § 1363 so as to avoid doubtful constitutional questions.[6] Id. at 1228. We therefore hold that Jones controls our decision here, and that § 1363 requires that the statutory aggravating facts be charged in an indictment, properly submitted to a jury, and proved beyond a reasonable doubt. See id. at 1228. Although the indictment made sufficient allegations, the statutory aggravating facts issue was not submitted to the jury, and we must therefore find error on the Count Eight instructions.

Notwithstanding the error with respect to the statutory aggravating facts issue, the Government contends that the conviction of Davis on Count Eight must nevertheless be upheld. The Government's position relies on the Supreme Court's recent decision in Neder v. United States, and asserts that the absence of an appropriate statutory aggravating facts instruction was harmless beyond a reasonable doubt. See Neder v. United States, 119 S. Ct. 1827 (1999) (Chapman harmless error rule applies to the omission of an element of an offense, where the element was uncontested and supported by overwhelming evidence). Under the facts relating to Count Eight, we believe the statutory aggravating facts element was both uncontested and supported by overwhelming evidence, and we are constrained to agree with the Government.

_____

[6] The Court took care to re-state the principle underlying the Jones decision, as follows:

> [U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.

Jones, 119 S. Ct. at 1224 n.6.

In Neder, where the defendant was charged with making false statements in connection with tax returns, the district court affirmatively instructed the jury that it "need not consider" the materiality of any false statements, "even though that language is used in the indictment." Neder, 119 S. Ct. at 1832. At that time, materiality was considered to be a question for the court, rather than for the jury. See id. at 1841. While concluding in Neder that materiality is an offense element for jury determination, the Court noted that, even on appeal, Neder made no argument that his false statements were immaterial and did not suggest that he would introduce any evidence bearing on the materiality issue if the case were remanded. Id. at 1836-37. The Court reasoned that reversal without any consideration of the effect of the error would result in a retrial focused on issues unrelated to the omitted jury instruction, and concluded that the Sixth Amendment does not require such a result. Id.

In Davis's case, the § 1363 offense is aggravated by destructive conduct either (1) directed at a dwelling, or (2) placing lives in jeopardy. Overwhelming evidence established that Davis fired gunshots at the McCoy family residence at Fort Belvoir, occupied at night by six persons. Davis has not contested, either at trial or on appeal, that the McCoy family residence was an occupied "dwelling." Under these circumstances, we conclude that the district court's failure to instruct the jury on the statutory aggravating facts issue under § 1363 was harmless beyond a reasonable doubt. See Neder, 119 S. Ct. at 1837 (citing Chapman v. California, 386 U.S. 18, 24 (1967)) (constitutional error harmless if it is "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained").

IV.

A.

Davis also contends on appeal that the district court incorrectly calculated the base offense level for his sentencing on Count Eight.[7] He asserts that the court's application of the aggravated property damage guideline, USSG § 2K1.4 (property damage by use of explosives), to

_____

[7] Davis was sentenced on September 4, 1998, pursuant to the Guidelines in effect on November 1, 1997.

8

Count Eight is legally inappropriate, because the "shooting" alleged in Count Eight does not constitute a "use of explosives" contemplated by § 2K1.4. We disagree.

In our consideration of this issue, we review de novo a challenge to the district court's sentencing guideline selection. United States v. Lambert, 994 F.2d 1088, 1091 (4th Cir. 1993). In contrast, the district court's factual findings at sentencing are reviewed for clear error. See United States v. Melton, 970 F.2d 1328, 1331 (4th Cir. 1992).

Two guidelines sections are potentially applicable to a § 1363 conviction: USSG § 2B1.3 (property damage or destruction) and USSG § 2K1.4 (property damage by use of explosives). See USSG App. A. Of these two guidelines, the more appropriate for the nature of the charged offense conduct should be applied. Id. The aggravated property damage guideline, § 2K1.4, is only appropriate for application to Davis's sentencing on Count Eight if a "use of explosives" was involved in the "shooting" of the firearm when he fired into the McCoy family dwelling. See Lambert, 994 F.2d at 1092 (guideline selection is based on the conduct charged in the indictment). Our analysis is tempered by our awareness that terms defined in one guideline may be used, with different meanings, in other sections. USSG § 1B1.1 comment. (n.2).**8** In this case, we must decide whether property damage caused by the "shooting" alleged in Count Eight constitutes "property damage by use of explosives" within the meaning of § 2K1.4.**9**

_____

**8** "Firearm" is one term whose definition is "generally applicable" throughout the Guidelines:

> "Firearm" means (i) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; . . . . A weapon, commonly known as a "BB" or pellet gun, that uses air or carbon dioxide pressure to expel a projectile is a dangerous weapon but not a firearm.

USSG § 1B1.1 comment. (n.1(e)). This definition therefore applies to the "property damage by use of explosives" guideline.

**9** The district court found that Davis and Wallace "fired a total of fifteen rounds into the house at about 12:45 a.m. on December 23, 1997." J.A. 541, 559.

B.

1.

We must first consider whether the discharge of a handgun[10] involves "explosives" within the aggravated property damage guideline. Commentary to that guideline, § 2K1.4, defines "explosives" as meaning an "explosive, explosive material, or destructive device." See USSG § 2K1.4 comment. (n.3). However, § 2K1.4 does not explicitly define "explosive," and there is no "generally applicable" Guidelines definition for that term. We therefore rely on the fact that "explosive," as defined by § 844(j) of Title 18, see infra, is within the scope of "explosive" for purposes of § 2K1.4. [11]

An "explosive" for purposes of the "property damage by use of explosives" guideline includes:

> gunpowders, . . . or [a] device that contains any . . . combustible units, or other ingredients, in such proportions, quantities, or packing that ignition by . . . detonation of the compound . . ., or device or any part thereof may cause an explosion.

18 U.S.C. § 844(j) (emphasis added). Gunpowder clearly is an "explosive," not only because it is specifically identified as such in the

_____

[10] We refer to the firearm used in the "shooting" as a handgun because the evidence established that a handgun with .380 ammunition had been used.

[11] The Guidelines exclusively refer substantive offenses under Title 18, § 844(f) and § 844(i), to § 2K1.4 for sentencing. See USSG App. A. Those offenses criminalize damage by means of an explosive, and explicitly define "explosive." See 18 U.S.C. § 844(f), (i), and (j). This leads to the § 844(j) definition of "explosive," a definition that is also explicitly incorporated by another guideline that relates to explosives offenses. See USSG § 2K1.3 comment. (n.1). We note that "explosive" for § 844 criminal offenses has been expansively interpreted, in contrast to a narrower "explosive" definition that is used for regulatory purposes. See, e.g., 18 U.S.C. § 841(d); United States v. Mena, 933 F.2d 19, 27 (1st Cir. 1991); United States v. Hepp, 656 F.2d 350, 352 (8th Cir. 1981).

10

statutory definition of explosive, but also by its properties and use. In an elementary sense, "shooting" requires an explosion to expel a projectile from a firearm.**12** The ammunition in a loaded handgun is thus an "explosive" under § 844(j), and also under § 2K1.4.

2.

Pursuant to the foregoing, the discharge of a handgun involves and requires an "explosive." Therefore, if the explosion of gunpowder inside a handgun when it is discharged constitutes a"use" of an explosive, the guideline for property damage by use of explosives, § 2K1.4, applies to Count Eight.

As the Supreme Court recognized in Bailey v. United States, the term "`use' draws meaning from its context, and we look not only to the term itself, but also to the [language and history of the] statute and the sentencing scheme," to determine its intended meaning. Bailey v. United States, 516 U.S. 137, 143-44 (1995). To interpret the word "use" for purposes of § 2K1.4, we first examine the history of the guideline. The cross reference to § 2K1.4 from the simple property damage guideline, § 2B1.3, was inserted because "property damage by use of explosives is an aggravated form of property destruction, just as armed robbery is an aggravated form of robbery." See USSG § 2B1.3(c); App. C (amend. 313). Thus, the guideline for property damage by use of explosives, § 2K1.4, is intended for application where the use of explosives in the offense conduct increases the risk or enormity of its injurious consequences. Cf. Black's Law Dictio-

_____

**12** The essential aspects of the firing, i.e., the shooting, of a handgun are as follows: A handgun is fired by bringing a cartridge in line with the gun's hammer, and releasing the hammer to discharge the cartridge. See 9 New Encyclopaedia Britannica 473 (15th ed. 1989). The cartridge is an ammunition unit composed of a case, a propellant charge, a primer, and a projectile or bullet. Id., 2 at 911; cf. 18 U.S.C. § 921(a)(17)(A). When the primer is ignited by mechanical shock or impact, it produces a sudden burst of flame that ignites a charge of high explosive (the propellant charge, gunpowder). See 2 New Encyclopaedia Britannica 277, 911 (15th ed. 1989); id., 9 at 282, 473. The gunpowder burns at an extremely high rate in a chamber at the rear of the gun, creating a gas pressure that drives the bullet along the barrel of the gun. Id., 23 at 856.

nary, 65 (6th ed. 1990) ("aggravation"). Firing a handgun at an occupied dwelling is an aggravated form of property damage, and thus falls squarely within the intended application of § 2K1.4.

Two other guidelines in the same guidelines' subchapter as § 2K1.4 have titles that include "use of explosive(s)." See USSG Part K (Offenses Involving Public Safety). These additional guidelines are § 2K2.4 (Use of Firearm, Armor-Piercing Ammunition, or Explosive During or in Relation to Certain Crimes) and § 2K1.7 (Use of Fire or Explosives to Commit a Federal Felony)(deleted by consolidation with § 2K2.4, eff. November 1, 1993). See USSG §§ 2K1.7 (deleted), 2K2.4, App. C (amend. 481). There are no explicit distinctions between the meaning of "use of" under these three guidelines. In fact, in 1993, two of these guidelines were consolidated, in order to reduce inconsistency in definitions between Guidelines sections, and to aid in development of a uniform body of applicable case law. See USSG App. C (amend. 481, eff. November 1, 1993). We therefore conclude that the term "use of explosive[s]" has the same meaning under all three guidelines.

Court decisions construing "use of" under any of these three guidelines are therefore persuasive as to the term's meaning under § 2K1.4. In Bailey, the Supreme Court interpreted "use of" a firearm during the commission of an offense, in violation of 18 U.S.C. § 924(c).**13** See Bailey, 516 U.S. at 144, 148-49. It held that "use of" a firearm means "active employment" of the firearm. Id. Firing, attempting to fire, brandishing, displaying, bartering, striking with a firearm, or even referring to a firearm in a manner calculated to bring about a change in circumstances, are examples of "active employment" of a firearm within the meaning of the statute's and USSG § 2K2.4's "use of" a firearm. Id.

The decision in Bailey, interpreting the term "use of a firearm" for purposes of § 924(c) and § 2K2.4, logically extends to a "use of explosive[s]" that may be sentenced under § 2K2.4. A "use of explosive[s]" under § 2K2.4, and under § 2K1.4 by analogy, thus requires

_____

**13** A defendant convicted of violating § 924(c) is sentenced according to § 2K2.4. See USSG § 2K2.4.

12

"active employment" of explosives.**14** The most obvious "active employment" of an explosive is to cause it to explode, just as the most obvious active employment of a firearm is to cause it to fire. Here, when Davis discharged his firearm, he caused gunpowder to explode, and as a result fired projectiles into the McCoy family dwelling on Fort Belvoir. Thus, Davis's shooting into the McCoy home was an "active employment" and therefore a "use of" explosives in the Bailey sense, as required by § 2K1.4.

By reviewing other offenses for which § 2K1.4 is the exclusive guideline recommended by the Commission, we confirm that a "use of explosives" under § 2K1.4 includes discharging a firearm. See USSG App. A. There are two offenses that criminalize property destruction "by means of" an explosive. 18 U.S.C. § 844(f)(1), (i)(1). Sentencing based on property damage "by use of explosives" for these § 844 offenses demonstrates that "use" of explosives under § 2K1.4 is intended in the general sense rather than a precise, technical sense. See Bailey, 516 U.S. at 145 (ordinary meaning of "use" is "to carry out a purpose or action by means of.").

_____

**14** Our conclusion that the meaning of "use of explosive[s]" is similar in § 2K1.4 and § 2K2.4 is further supported by parallel and intertwined substantive and sentencing developments of two offenses. The language that defines the § 844(h) "use of explosives" offense is essentially identical to the original language of the § 924(c) "use of a firearm" offense. The "use of a firearm" offense is sentenced under § 2K2.4. See 18 U.S.C. § 924(c); Bailey, 516 U.S. at 147.

A § 844(h) violation now is sentenced under the same guideline as the "use of a firearm" offense, suggesting that "use of" has a similar meaning regardless of the type of device used. Historically, however, two other guidelines have been applied to the same § 844(h) offense. Those violations committed prior to November 18, 1988 are still sentenced directly under § 2K1.4. See USSG § 2K1.4 comment. In 1988, the applicable guideline changed to § 2K1.7 (later deleted), to conform the Guidelines to new statutory sentencing mandates. See USSG App. C. (amend. 185). A 1993 non-substantive consolidation made the same guideline applicable to § 844(h) and § 924(c) violations. See USSG App. C (amend. 481, eff. November 1, 1993). Thus, "use of" explosives has a similar meaning across these similar guidelines, and that meaning is consistent with the meaning of "use of" with firearms offenses.

13

Our holding today is a limited one -- that "property damage by use of explosives," under § 2K1.4, includes the damage caused by projectiles discharged from a firearm. Indeed, another guideline recognizes that conduct involving a firearm that contains explosive materials may be sentenced either under a guideline relating to explosives, or under a guideline relating to firearms or ammunition. See USSG § 2K1.3 comment. (n.1). In such an instance, and consistent with our conclusion, the guideline directs the use of the greater resulting offense level. Id.

C.

Given our decision that § 2K1.4 may be applied to the offense conduct charged in Count Eight, we determine de novo whether it is an appropriate guideline to apply. In the atypical case where an indicated guideline is inappropriate because of the particular conduct involved, the guideline most applicable to the nature of the charged offense conduct of which the defendant was convicted should be used. See USSG App. A.

Count Eight charged Davis with conduct constituting aggravated property damage. In choosing between the Commission's two applicable guidelines for a § 1363 violation, §§ 2B1.3 and 2K1.4, the aggravated property damage guideline is clearly more appropriate for application to the charged aggravated offense conduct. As we have pointed out, Davis fired a number of shots into the occupied McCoy family residence at Fort Belvoir. In our view, firing gunshots at an occupied dwelling under these circumstances constitutes a serious, aggravated form of the property damage offense.

Although other guidelines not recommended by the Commission for a § 1363 offense could also be appropriate, we are unable to conclude that the charged conduct here is so atypical as to require us to deviate from the Commission's indicated guidelines for this offense. We therefore affirm the district court's selection and application of § 2K1.4 as the appropriate guideline for the sentencing of Davis on Count Eight.[15]

_____

[15] Davis also claims error in the district court's application of an obstruction of justice sentencing enhancement, pursuant to USSG

14

V.

Pursuant to the foregoing, we affirm Davis's convictions and sentence against each of these challenges.

AFFIRMED

MICHAEL, Circuit Judge, dissenting in part:

Terence Davis was convicted for firing several shots into an occupied house on a military base, see 18 U.S.C. § 1363, but he was sentenced for "property damage by use of explosives," USSG § 2K1.4. Sergeant Alvin York, the World War I sharpshooter who knew all about guns, would not have agreed with the majority that damage to a house caused by bullets fired from a handgun is"property damage by use of explosives." A demolition worker who uses explosives every day would not agree with the majority either. It just doesn't sound right to say that bullet holes in wood or brick are damage caused by explosives. Nor can the majority's construction be saved by all of the definitions and cross-definitions in the guidelines and statutes. I usually agree with my colleagues in the majority, but this time I must respectfully dissent on the guidelines issue. I agree with the rest of their opinion.

I.

"Property damage by use of explosives" has a plain, common sense meaning. Explosives blow things apart through the violent expansion

_____

§ 3C1.1. This claim of error fails, however. The evidence demonstrated, and the district court found, that Davis had left a message on one witness's voice mail, to the effect that, if the witness did not stop tarnishing Davis's reputation, Davis would kill him if he saw the witness again. On another witness's voice mail, Davis threatened that, if the witness did not stop lying about Davis to the FBI, Davis would "deal with him." Davis concedes that his acquittal on the witness tampering charges does not preclude sentence enhancement for this conduct. See United States v. Martinez, 136 F.3d 972, 979 (4th Cir.), cert. denied, 119 S. Ct. 122 (1998). On this record, we cannot conclude that the court clearly erred. See United States v. Self, 132 F.3d 1039, 1041 (4th Cir. 1997)("clearly erroneous" review standard).

15

of internal energy. See The Oxford Encyclopedic English Dictionary 493 (3d ed. 1996) (defining "explode" and"explosive"). The explosion and the physical (property) damage are contiguous. Shooting small caliber bullets into property is different. There is damage from the impact of the bullets, but it is not explosion damage. Simply put, bullet hole damage is damage by use of a gun, not damage by use of explosives. It is too much of a stretch to say anything else.

The official commentary to § 2K1.4 supports this plain reading of the guideline language. Application Note 3 defines"explosives" as follows: "`Explosives,' as used in the title of this guideline, includes any [1] explosive, [2] explosive material, or [3] destructive device." USSG § 2K1.4 cmt. 3. The first two terms in the definition are repetitive and do not help us. However, the third term,"destructive device," does add useful context because that term is defined in the general definitions section of the guidelines:

> "Destructive device" means any article described in 26 U.S.C. § 5845(f) (including an explosive, incendiary, or poison gas - (i) bomb, (ii) grenade, (iii) rocket having a propellant charge of more than four ounces, (iv) missile having an explosive or incendiary charge of more than one-quarter ounce, (v) mine, or (vi) device similar to any of the devices described in the preceding clauses).

USSG § 1B1.1 cmt. 1(k). Davis's .380 caliber handgun is not covered by any of the specific examples (bomb, grenade, etc.) in the guideline definition. The guideline definition, of course, incorporates "any article described in 26 U.S.C. § 5845(f)," and that statute goes further and includes the following in its definition of"destructive device:"

> any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes.

26 U.S.C. § 5845(f)(2). Thus, the guideline definition of "explosives," insofar as it incorporates the statutory definition of "destructive

16

device," excludes small caliber handguns with a bore of one-half inch or less. Davis's .380 caliber handgun is therefore excluded from the "destructive device" category of explosives.

The majority contends that Davis <u>used</u> explosives because the bullets he fired were propelled by a charge of gunpowder, which is an explosive. But in common parlance Davis used a gun, not gunpowder. The majority's strained and overly technical read of the word "use" in "use of explosives" misses the basic intent of the guideline phrase. Again, it means the use of explosives to blow something apart. It does not mean the use of gunpowder to propel a bullet, as the majority argues. If the majority is right, then ramming a two-ton truck into a house would be property damage by use of explosives. It would be because the truck is propelled by the explosion of gasoline in the engine block just as a bullet is propelled by the explosion of gunpowder in a gun's chamber. Thus, the majority's construction lacks practical and predictable limits.

A scan through the guidelines reveals that there is a difference between using a gun and using explosives. Offenses involving explosives and offenses involving firearms are often treated separately. For example, § 2K1.3 covers the "Unlawful Receipt, Possession, or Transportation of <u>Explosive</u> Materials" (emphasis added). A separate guideline, § 2K2.1, covers the "Unlawful Receipt, Possession, or Transportation of <u>Firearms</u> or Ammunition" (emphasis added). If the term "explosives" included all guns, there would be no need for separate guidelines. Language in individual guidelines also differentiates between the use of explosives and the use of firearms. Section 2K2.4 is typical. It applies to "<u>Use of Firearm</u>, Armor-Piercing Ammunition, <u>or Explosive</u> During or in Relation to Certain Crimes." <u>See also</u> USSG § 2B1.1(c)(1) (referring to theft, receipt, possession, etc. of "a <u>firearm</u>, destructive device, <u>explosive material</u>, or controlled substance") (emphasis added).

Common sense and the structure of the guidelines both dictate that use of a handgun and use of an explosive are different acts. Because Davis damaged property (an occupied dwelling) by using his handgun to shoot small caliber bullets into it, he should not be sentenced under § 2K1.4 for property damage by use of explosives.

17

II.

I recognize that the district judge struggled to find a guideline with a sentencing range long enough to match Davis's crime. The problem is this: any guideline that fits neatly, such as § 2B1.3 (Property Damage or Destruction) or § 2A2.2 (Aggravated Assault), carries a lighter sentence. Nonetheless, we do a disservice to the guidelines system when we stretch the meaning of one guideline in order to increase the sentence to a level that appears to be deserved. A major purpose of the guidelines is to bring predictability to sentencing. The majority ignores that purpose today.

All would not be lost if Davis was sentenced under another guideline with a lower base offense level. In particular, an upward departure could be considered because Davis fired a semi-automatic weapon in the residential area of a military base. As a result, § 5K2.6 (Weapons and Dangerous Instrumentalities) or § 5K2.17 (High-Capacity, Semiautomatic Firearms) might apply. These guideline policy statements allow for a substantial upward departure when a gun is fired and its use endangers lives or increases the likelihood of death or injury. I do not know whether the district judge on resentencing would reach the original sentence of 170 months, but Davis's original sentence should still be vacated. The guidelines would be better served in the long run, and the process of guideline development could work the way Congress intended. The Sentencing Commission could study the matter and, if warranted, write a new guideline with punishment that takes better account of the seriousness of the crime Davis committed. See 28 U.S.C. § 994(o).

I would remand for resentencing.

18