UNPUBLISHED

# UNITED STATES COURT OF APPEALS

### FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

　　　　*Plaintiff-Appellee,*

v.

JOHN J. NUCKLES, JR.,

　　　　*Defendant-Appellant.*

No. 02-4923

Appeal from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., District Judge.
(CR-02-42)

Submitted: April 11, 2003

Decided: April 22, 2003

Before WIDENER, WILKINSON, and TRAXLER, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

### COUNSEL

Scott C. Brown, JACKSON LAW OFFICE, Wheeling, West Virginia, for Appellant. Thomas E. Johnston, United States Attorney, Sam G. Nazzaro, Assistant United States Attorney, Randolph J. Bernard, Assistant United States Attorney, Wheeling, West Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

John J. Nuckles, Jr., pled guilty to maintaining an establishment for the distribution of a controlled substance, namely, cocaine base (crack), in violation of 21 U.S.C. § 856 (2000), and was sentenced to a term of sixty-three months imprisonment. Nuckles appeals his sentence, arguing that the district court clearly erred in applying *U.S. Sentencing Guidelines Manual* § 2D1.8(a)(1) (2002), rather than § 2D1.8(a)(2), and in determining that he did not have a mitigating role in the offense. USSG § 3B1.2. We affirm.

During an investigation of crack sales in Wheeling, West Virginia, Nuckles' home was under surveillance for several months as a suspected crack house. A number of crack dealers were observed selling crack from Nuckles' porch. Surveillance videotape recorded Nuckles socializing freely with the dealers and, on one occasion, selling crack to a confidential informant in front of his house. Several dealers were arrested on June 22, 2002, and 32.32 grams of crack were found concealed outside the house. Nuckles was arrested a month later, pled guilty to the above offense, and stipulated that his relevant conduct consisted of at least 20 but less than 35 grams of crack.

At his sentencing, Nuckles argued that the guideline applicable to his offense was § 2D1.8(a)(2), rather than § 2D1.8(a)(1), as recommended in the presentence report. Subsection (a)(1) provides that the base offense level is the offense level from § 2D1.1 applicable to the underlying offense unless subsection (a)(2) applies. In Nuckles' case, subsection (a)(1) yielded a base offense level of 28. In the 2002 Guideline Manual used to determine Nuckles' sentence, subsection (a)(2) directs that, "[i]f the defendant had no participation in the underlying controlled substance offense other than allowing use of the premises, the offense level shall be 4 levels less than the offense level from § 2D1.1 applicable to the underlying controlled substance

offense, but not greater than level 26."[1] Subsection (a)(2) may apply when the defendant initially acquired the property for a legitimate purpose and has not previously allowed any other property to be used as a drug establishment.[2]

Nuckles testified at the sentencing hearing that he permitted the crack dealers to use his porch because they carried guns and intimidated him and because his addiction to crack made him susceptible to manipulation by them. He admitted that he was paid in crack for the use of his premises. He maintained that he sold crack only once— the videotaped sale to the confidential informant, who was an acquaintance. However, he stated that he shared crack with friends. Nuckles testified that he had several times called the police for help in getting rid of the dealers, but that the police had been unresponsive. A neighbor testified that Nuckles had used her telephone twice to call the police about the dealers, but her testimony was unclear as to whether the calls were made before or after Nuckles' house was raided on June 22. James Church, one of the dealers, testified that, when he came to Wheeling to sell drugs, he was introduced to Nuckles and told that Nuckles' house was a place where he could sell crack. He said he paid Nuckles in drugs or money for the use of his house, as did other people, that Nuckles both brought him customers and made sales, and that Nuckles never called the police. He said he did not carry a gun or intimidate Nuckles.

The sentencing court's determination as to the applicable guideline is reviewed de novo. *United States v. Davis*, 202 F.3d 212, 218 (4th Cir. 2000). Its underlying factual findings are reviewed for clear error.

---

[1]The 2001 Manual provides that the base offense level under § 2D1.8(a)(2) may not be greater than level 16.

[2]The commentary to § 2D1.8 provides the following examples of a defendant to whom subsection (a)(2) would not apply: one "who possessed a dangerous weapon in connection with the offense . . . [or] guarded the cache of controlled substances . . . [or] arranged for the use of the premises for the purpose of facilitating a drug transaction . . . [or] allowed the use of more than one premises . . . [or] made telephone calls to facilitate the underlying controlled substance offense . . . or otherwise assisted in the commission of the underlying controlled substance offense." USSG § 2D1.8, comment. (n.1).

*Id.* Having viewed the surveillance tape of Nuckles interacting with the crack dealers on several occasions and making the crack sale to the confidential informant, and having had the opportunity to gauge the credibility of Nuckles' testimony and that of the other witnesses, the district court determined that Nuckles had willingly participated in the underlying drug conspiracy. This factual finding was not clearly erroneous. Given the district court's factual finding, it did not err in determining that § 2D1.8(a)(1) was the applicable guideline.

We further find that Nuckles did not meet his burden of showing that he had a minor or minimal role in the offense. *See United States v. Akinkoye*, 185 F.3d 192, 202 (4th Cir. 1999) (defendant has burden of proof that mitigating role adjustment applies). Role adjustments are determined on the basis of the defendant's relevant conduct. *United States v. Fells*, 920 F.2d 1179, 1183-84 (4th Cir. 1990). The "critical inquiry is thus not just whether the defendant has done fewer 'bad acts' than his codefendants, but whether the defendant's conduct is material or essential to committing the offense." *United States v. Pratt*, 239 F.3d 640, 646 (4th Cir. 2001) (internal quotation omitted). The district court found that Nuckles' conduct was essential to the furtherance of the underlying criminal activity. We conclude that it was at least material. We may affirm a sentence enhancement on an alternative ground if the record discloses conduct "that independently and properly should result in an increase in the offense level by virtue of the enhancement." *United States v. Garnett*, 243 F.3d 824, 830 (4th Cir. 2001) (internal quotation and citation omitted). Consequently, we conclude that the adjustment was not clearly erroneous.

We therefore affirm the sentence imposed by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*