OPINION OF THE COURT
HAIGHT, Judge:
A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of two specifications of conspiracy to sell military property, the wrongful use of oxycodone, and two specifications of larceny, in violation of Articles 81, 112a and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 912a, and 921 [hereinafter UCMJ]. The military judge sentenced appellant to a bad-conduct discharge, confinement for forty-eight months, and reduction to the grade of E-l. Pursuant to a pretrial agreement coupled with a thirty-day reduction in confinement for dilatory post-trial processing, the convening authority approved only so much of the sentence as provides for a bad-conduct discharge, confinement for seventeen months, and reduction to E-l.[1]
This ease is before us for review pursuant to Article 66, UCMJ. Appellant personally raised two issues pursuant to United States v. Grostefon, 12 M.J. 431 (C.M.A.1982), both of which merit discussion, one of which merits relief.
FACTS
Appellant required additional money to support his illegal drug habit. Therefore, in August of 2011, appellant entered into an agreement with his co-conspirator, Specialist (SPC) WW, to steal and then sell military ammunition. This particular enterprise did not come to fruition until 6 September 2011. As it turns out, appellant effectuated this conspiracy twice on the same day.
At the conclusion of a military range exercise, appellant was assigned as a member of a detail tasked to return unspent ammunition to the Ammunition Supply Point. Due to inclement weather shut-downs, the detail was unable to turn in the unused ordnance on that day and instead left the ammunition in the back of a military truck in the company area. Appellant was then released for the day. Recognizing the opportunity, appellant called SPC WW and they agreed that this was their chance to carry out their conspiracy. Appellant returned to the company area; stole two boxes of loose 5.56 millimeter (mm) ammunition, each comprising 900 rounds for a total of 1800 rounds; and transported them to SPC WWs house. A buyer whom SPC WW had contacted arrived and purchased the stolen ammunition.
Appellant and SPC WW immediately took their proceeds to a gas station, purchased cigarettes, and SPC WW took appellant to a drug supplier from whom appellant purchased five Percocet pills. During this time frame, appellant and SPC WW agreed they would steal and sell some more of the ammunition that appellant had left behind in the military truck. Later that same night, appellant returned to the company area and stole two crates of linked 5.56 mm ammunition, each comprising 1600 rounds for a total of 3200 rounds. He transported this stolen ammunition to SPC WWs house, where the two carried the crates to the backyard shed as it was too late in the day to sell the contraband at that time. The next day, the ammunition was discovered to be missing and an investigation ensued, in which appellant was eventually implicated.
Appellant pleaded guilty to and was convicted of two specifications of conspiracy to sell “5.56 mm ammunition, explosives, military property of the United States” and two specifications of stealing that ammunition, again described as “explosives.” The difference in the two conspiracy convictions is that the overt acts alleged to accomplish the first conspiracy concern the theft and sale of the 1800 rounds of loose 5.56 mm ammunition whereas the overt acts for the subsequent conspiracy concern the theft and transport of the 3200 rounds of linked 5.56 mm ammunition.
*701 Appellant now argues that 5.56 mm ammunition is not an explosive. He also now asserts that his meeting of the minds with SPC WW constitutes but one conspiracy, not two.
LAW AND DISCUSSION

Definition of Explosive

For purposes of Article 103, UCMJ, the failure to secure or wrongful disposition of captured or abandoned property; Article 108, UCMJ, the wrongful sale, loss, damage, destruction, or disposition of military property; and Article 121, UCMJ, the larceny of personal property, the maximum allowable punishment is significantly increased if the property in question is a firearm or explosive. See Manual for Courts-Martial, United States (2008 ed.) [hereinafter MCM], pt. IV, ¶¶ 27.e, 32.e, 46.e.[2],[3] Rule for Courts-Martial [hereinafter R.C.M.] 103(11) defines the term “explosive” as follows:
“Explosive” means gunpowders, powders used for blasting, all forms of high explosives, blasting materials, fuzes (other than electrical circuit breakers), detonators, and other detonating agents, smokeless powders, any explosive bomb, grenade, missile, or similar device, and any incendiary bomb or grenade, fire bomb, or similar device, and any other compound, mixture, or device which is an explosive within the meaning of 18 U.S.C. § 232(5) or 844®.
Therefore, in accordance with a “plain meaning” interpretation of the above definition, ammunition which contains gunpowder or smokeless powder is unambiguously an explosive as those terms are expressly listed in the definition, with gunpowder as the very first example. See United States v. Schell, 72 M.J. 339, 343 (C.A.A.F.2013) (“Unless the text of a statute or rule is ambiguous, ‘the plain language will control unless it leads to an absurd result.’ ”); see also State v. Field, 132 N.H. 760, 766, 571 A.2d 1276, 1280 (1990) (“defendant’s argument that a round of live ammunition is not an explosive strains credulity”). However, appellant’s reliance on United States v. Lewis, ARMY 20120797, 2013 WL 1960747 (Army Ct.Crim.App. 27 Feb 2013) (summ. disp.), compels further analysis.
In Lems, a panel of this court determined “5.56 mm rounds of ammunition are not explosives for the purposes of Articles 108 and 121, UCMJ.” Lewis, 2013 WL 1960747, at *1. In its decision, that panel relied upon United States v. Graham, 691 F.3d 153 (2d Cir.2012) vacated on other grounds, — U.S. -, 133 S.Ct. 2851, 186 L.Ed.2d 902 (2013). In Graham, the United States Court of Appeals for the Second Circuit concluded a single 9 mm cartridge did not fall within 18 U.S.C. § 844®’s definition of an “explosive.” Graham, 691 F.3d at 161. As the definition of explosive in § 844® substantially mirrors that in R.C.M. 103(11), this conclusion appears persuasive. However, upon further review, general application of Graham to Articles 103, 108 and 121, and that ruling’s specific application to the facts of this case are inapposite.
Regarding the general applicability of the reasoning in Graham to Articles 103,108 and 121, we note the Second Circuit was grappling with a fundamentally different question than we are. That court was defining the interplay between two separate federal crimes, one being that of the use or carry of a “firearm” during and in relation to a crime of violence and the second being the use or *702 carry of an “explosive” during the commission of any felony. Graham, 691 F.3d at 155. See 18 U.S.C. §§ 924(e) and 844(h). While perpetrating the crime of extortion, Graham fired a single shot from his 9 mm pistol into the ground next to his victim. Graham, 691 F.3d at 157. Because that single round of ammunition was considered an explosive at trial, “Graham’s 50-year sentence included two consecutive, mandatory 10-year terms of imprisonment for the violations of 18 U.S.C. § 924(c)(1)(A)(iii) [discharge of a firearm] and 18 U.S.C. § 844(h)(1) [use of an explosive].” Id. at 155. Essentially, on appeal, the Graham court determined an interpretation of the term “explosive” which required the “explosive” sentencing enhancement to be stacked atop the “firearm” sentencing enhancement was unreasonable and accordingly concluded that a single 9 mm round was not an “explosive” for purposes of § 844(h)(1). Id. at 164.
Turning to military law, for purposes of Articles 103, 108, and 121, a sentence aggra-vator applies if the property which is the object of those crimes is an explosive. A sentence modifier in property crimes which deals with the nature of the property in question is far different than a sentence modifier which deals with the means of a violent crime and what particular tools are implemented to effectuate that crime.[4] The distinction between a sentence aggravator based upon how a crime is committed and one based upon the nature of the property that is the object of a particular crime is repeatedly stressed in the MCMs Analysis of the Punitive Articles.[5]
Distinct from the scenario in Graham, in every instance that the President allows for an “explosive” to be a sentence aggravator for crimes under the UCMJ, it is coupled with the term “firearm.”[6] Accordingly, the MCM’s use of the phrase “firearm or explosive” as a single aggravator alleviates any fear of dual enhancements. Also distinguishing the “explosive” sentence enhancer applicable in Graham from that in Articles 103, 108 and 121, UCMJ, is that the one in 18 U.S.C. § 844(h) is mandatory as opposed to the mere potentiality of an increased sentence under the UCMJ.
We agree with the Graham court that textual interpretation “ ‘is a holistic endeav- or’ ” and must be conducted “ ‘in light of the surrounding language and framework’” as well as by looking to the overall statutory or *703 regulatory scheme. Graham, 691 F.3d at 160 (citing United Sav. Ass’n of Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); County of Nassau v. Leavitt, 524 F.3d 408, 414 (2d Cir.2008)). We hasten to point out the legal framework under the UCMJ, Title 10, is significantly different from that of the framework under Title 18, United States Code. In fact, the MCM’s Analysis to R.C.M. 103 (Definitions) emphasizes, “[i]t is the drafters’ intent that the words of the Manual be construed in accordance with their plain meaning, with due deference to previous usage of terms in military law or custom.” R.C.M. 103 analysis at A21-4. Likewise, in our interpretation of “explosives” for purposes of military law, we are not restricted to the Second Circuit’s interpretation of that same term for the purpose of its application to a completely different statute and different form of sentence aggra-vator. In other words, applying Graham to Articles 103,108 and 121, UCMJ, is an exercise in the age-old comparison of apples to oranges. Again, reference to the MCM’s analysis of the R.C.M. provides pointed guidance:
A rule is binding even if the source of the requirement is a judicial decision or a statute not directly applicable to courts-martial. If the President had adopted a rule based on a judicial decision or a statute, subsequent repeal of the statute or reversal of the judicial decision does not repeal the rule....
... Users are reminded, however, that primary reliance should be placed on the plain words of the rules....
.. .Developments in the civilian sector that affect the underlying rationale for a rule do not affect the validity of the rule except to the extent otherwise required as a matter of statutory or constitutional law.... Once incorporated into the Executive Order, such matters have an independent source of authority and are not dependent upon continued support from the judiciary.
R.C.M. (Introduction) analysis at A21-3. In this opinion, we apply the definition provided by the President. We do not add, expand, or broaden that definition, nor do we restrict, limit, or reject portions of it as the dissent would have us do. If the President had wanted the “explosive” sentence enhancer to only apply to amounts of gunpowder or smokeless powder greater than that found in small arms ammunition, then the process to effect such a desire was certainly known. For example, the maximum punishment for longer unauthorized absences is greater than that for those of shorter duration. Likewise, the potential sentence for possession of less than 30 grams of marijuana is less severe than that for possession of a greater quantity of the same drug. See MCM, pt. IV, ¶¶ lO.e, 37. e.
The imprudence of applying Graham to Article 103, 108 or 121, UCMJ, is alluded to in that decision itself. First, when addressing the Fourth Circuit’s conclusion in Davis, 202 F.3d 212, that the firing of handgun ammunition into a dwelling constituted property damage by use of an “explosive,” the court in Graham specifically pointed out the Davis court was not “grappl[ing] with the relationship between the respective sentencing enhancements in § 844(h) (explosives) and § 924(c) (firearms).” Graham, 691 F.3d at 163. Neither are we.
Second, it is difficult to reconcile any determination that the 18 U.S.C. § 844(j) definition of “explosive” does not include small arms ammunition with § 844(g)’s apparent criminalization of the possession of an explosive in the form of small arms ammunition in an airport. Under § 844(g), it is a crime to possess an explosive in an airport, but the statute provides a specific exception to criminal liability if the possession of the explosive in question is ammunition inside either checked baggage or a closed container. Therefore, ammunition possessed outside of checked baggage is included within the definition of “explosive.” The Graham court resolved this apparent contradiction to their interpretation by stating, “[sjuffice it to say that the Government arguments [that the structure of 844(g) supports including small arms ammunition within the definition of explosive] are aimed at a different ease than the one before us today.” 691 F.3d at 164. We are now faced with such “a different case.”
*704 Regarding the specific applicability of Graham to the instant case, when declining to view a single 9 mm cartridge as an explosive, that court refrained from speculating how 18 U.S.C. § 844(j)’s definition of “explosive” applied to ammunition generally. Id. at 162. The Second Circuit stated, “[w]e do not hold here that ammunition generally (small arms- or otherwise), which may conceivably be employed in quantities or in a manner far different from the single 9-millimeter cartridge discharged by Graham, cannot fall within 844(j)’s definition of explosive, and thus trigger the 844(h) enhancement. We decide only the case before us.” Id.. We do the same here.
With respect to how R.C.M. 103(11) defines “explosives,” we believe it is a simple question of reverse logic. Surely, the lethal rifles and pistols which our servicemembers are issued, trained on, deploy with, defend themselves with, engage the enemy with, have access to, and are in regular contact with are firearms. “Firearm” is defined as “any weapon which is designed to or may be readily converted to expel any projectile by the action of an explosive.” R.C.M. 103(12) (emphasis added).[7] Therefore, if a service-member’s individual weapon is only a firearm if it discharges by virtue of an explosive, then the ammunition which provides that required explosive must, by logic, be included within that term’s definition.[8] More simply put, if 5.56 mm ammunition is not an explosive, then, by definition, the weapon that fires it cannot be a firearm. Such a conclusion is untenable and obviously not contemplated by the President when adding a sentence escalator for firearms and explosives to the maximum allowable punishments for Articles 103, 108, and 121, in order to protect the community and prevent disruption to the military mission. Loss of accountability for rounds of ammunition, regardless of their value, is more dangerous and disruptive than the loss of $1,000.00 worth of canteen covers.[9]
After entering his plea of guilty and having the term “explosive” defined for him multiple times — in accordance with R.C.M. 103(11)— by the military judge, appellant admitted under oath that the ammunition which he conspired to wrongfully sell and stole constituted explosives no less than twelve times. These admissions are significant as they occurred after the military judge highlighted to appellant and counsel that he needed to be convinced that the property was. of the explosive nature alleged. Appellant took this to heart and asserted, “I dealt with ammunition the whole time I was at Fox Company and I was very aware that it was an explosive.”[10] We concur with appellant’s assessment at trial. While 5.56 mm ammunition may not qualify as “high explosives,” it is an “explosive.” See United States v. Bopp, NMCM 200200334, 2002 WL 31720713, at *4 (N.M.Ct.Crim.App. 25 Nov. 2002) (firecrackers constitute an “explosive” but do not constitute a “highly explosive article”); Unit *705 ed States v. Hall, 3 M.J. 969 (N.C.M.R.1977) rev’d on other grounds, 5 M.J. 134 (C.M.A.1978) (while blank rounds of M-16 ammunition contain gunpowder, which is a propellant explosive, they are not high explosives). We, therefore, conclude no error was committed in accepting appellant’s guilty pleas to his crimes which equated the 5.56 mm ammunition in question to explosives.

Conspiracy

Appellant was charged with conspiring with SPC WW to sell loose 5.56 mm ammunition and separately charged with conspiring at the same time and location with the same co-conspirator to sell linked 5.56 ammunition. This charging scheme may have originally made sense if the government theory was that the objectives of those two conspiracies were different in that separate agreements were entered into with the specific purpose of selling distinct properties of two different natures. If so,' then the first conspiracy terminated when the loose 5.56 mm ammunition was sold. See United States v. Beverly, 14 USCMA 468, 471, 34 C.M.R. 248, 251 (1964) (a conspiracy is terminated when the object of that conspiracy is accomplished).
However, the above is not how the facts unfolded. Instead, appellant pleaded guilty to two specifications of conspiracy to commit the same crime, the sale of 5.56 mm ammunition, explosives, military property of the United States. In accordance with his pleas, he was found guilty twice of the same conspiracy, albeit with different supporting overt acts. This is the very issue[11] that our superior court summarily disposed of in United States v. Jones, 72 M.J. 97 (C.A.A.F.2013) (summ. disp). It is clear from the record— specifically the stipulation of fact — that the agreement between appellant and his co-conspirator was to sell ammunition generally, regardless as to whether it was loose or linked, as part of a single ongoing “illicit business arrangement.” See also United States v. Pereira, 53 M.J. 183 (C.A.A.F.2000). Therefore, as the Court of Appeals for the Armed Forces (CAAF) did in Jones, we will consolidate the two conspiracy specifications. Jones, 72 M.J. 97. Also, like the CAAF in Jones, although we merge the two conspiracy offenses, we are satisfied that appellant suffered no prejudice as to his sentence. See United States v. Winckelmann, 73 M.J. 11 (C.A.A.F.2013); United States v. Sales, 22 M.J. 305 (C.M.A.1986).
CONCLUSION
Specifications 1 and 2 of Charge I are consolidated into a single specification, The Specification of Charge I, to read as follows:
Charge I: Article 81.
THE SPECIFICATION: In that Private (E-2) Brian A. Murphy, U.S. Army, did, at or near Fort Bragg, North Carolina, between on or about 1 August 2011 and on or about 6 September 2011, conspire with Specialist W.C.W. to commit an offense under the Uniform Code of Military Justice, to wit: selling 5.56 mm ammunition, explosives, military property of the United States, and in order to effect the object of the conspiracy the said Private (E-2) Brian A. Murphy removed loose 5.56 mm ammunition, brought it to Specialist W.C.W., Specialist W.C.W. contacted a buyer for the ammunition, Specialist W.C.W. gave the ammunition to the buyer, and the said Private (E2) Brian A Murphy removed linked 5.56 millimeter ammunition, brought it to Specialist W.C.W., and Specialist W.C.W. took possession of the ammunition so that Specialist W.C.W. could arrange to sell the ammunition to a buyer.
The findings of guilty of Charge I and its specification (consolidated) are AFFIRMED. The finding of guilty of Specification 2 of Charge I is set aside and that specification is DISMISSED. The remaining findings of guilty and the approved sentence are AFFIRMED. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside *706 by our decision, are ordered restored. See UCMJ arts. 58b(c) and 75(a).
Chief Judge PEDE, Senior Judge LIND, Senior Judge KERN, Senior Judge COOK, Judge TELLITOCCI, Judge ALDYKIEWICZ, Judge MORAN, and Judge BORGERDING concur.
Judge CAMPANELLA took no part in the decision of this ease.

. The military judge awarded thirty days of confinement credit. Although this credit should have been reflected in the Action and Promulgating Order, it was not. See Rule for Courts-Martial 1107. Accordingly, to the extent appellant has not already received this credit, appellant will be credited with thirty days against his sentence to confinement.

. Appellant's misconduct occurred in 2011. Therefore, the 2008 edition of the MCM is applicable to his offenses. The relevant provisions of the 2008 MCM remain unchanged in the 2012 edition of the MCM.

. The maximum sentence for either selling military property or stealing military property of a value of $500.00 or less pursuant to Articles 108 and 121, UCMJ, respectively, is a bad-conduct discharge, one year of confinement, and forfeiture of all pay and allowances. However, if the military property sold or stolen is "any firearm or explosive,” regardless of value, the maximum sentence for each of these offenses is a dishonorable discharge, ten years of confinement, and forfeiture of all pay and allowances. For Article 103, UCMJ, if the captured or abandoned property is "any firearm or explosive,” the maximum sentence is a dishonorable discharge, five years of confinement, and total forfeitures, as opposed to a maximum punishment of a bad-conduct discharge, six months of confinement and total forfeitures if the property in question is of a value of $500.00 or less.

. We recognize that the Article 134, crime of "threat or hoax designed or intended to cause panic or public fear” refers to harms threatened to be done by means of an explosive, among other means. While we need not determine if explosives include small arms ammunition for purposes of that offense, we do note that particular paragraph is the MCM’s only use of the term "explosive” not in conjunction with the term "firearm.” Therefore, on those occasions where the two are mentioned together, words and terms should be interpreted in accordance with their companions. See Gutierrez v. Ada, 528 U.S. 250, 255, 120 S.Ct. 740, 145 L.Ed.2d 747 (2000) (Supreme Court invokes the canon noscitur a soci-is).

. The 2002 Amendment to the authorized maximum punishment for Article 103 adds the sentence aggravator "any firearm or explosive” because "regardless of the intrinsic value of such items, the threat to the community is substantial when such items are wrongfully bought, sold, traded, dealt in or disposed.” MCM, App. 23, Analysis of Punitive Articles, ¶ 27.e at A23-8. This same sentence aggravator applies to Article 108, because:
[t]he harm to the military in such cases is not simply the intrinsic value of the item. Because of their nature, special accountability and protective measure are employed to protect firearms or explosives against loss, damage, destruction, sale, and wrongful disposition. Such property may be a target of theft or other offenses without regard to its value. Therefore, to protect the Government's special interest in such property, and the community against improper disposition, such property is treated the same as property of a higher value.
MCM, App. 23, Analysis of Punitive Articles, ¶ 32.e at A23-9. Likewise, this same sentence aggravator applies to Article 121 for similar reasons "because, regardless of the intrinsic value of such items, the threat to the community and disruption of military activities is substantial when such items are wrongfully taken.” MCM, App. 23, Analysis of Punitive Articles, ¶ 46.e at A23-16.

.The dissent in United States v. Davis, 202 F.3d 212, 221-22 (4th Cir.2000), stresses that offenses involving the use of explosives and offenses involving the use of firearms are often treated separately. (Michael, J. dissenting). This is simply not the case for purposes of Articles 103, 108 and 121, where "firearm or explosive” is treated as a single modifier.

. Cf. United States v. Laster, 42 M.J. 538, 542 (A.F.Ct.Crim.App.1995) (pellet pistol which expels projectile via carbon dioxide is not a firearm); United States v. Hawthorne, ARMY 9800209, 2001 WL 36264251, at *4 (Army Ct.Crim.App. 26 Jan.2001) (mem. op.) (BB or pellet guns that use air or carbon dioxide pressure to expel a projectile are not firearms).

. This simple and persuasive syllogism matches the holding in Davis, 202 F.3d 212 (determining that use of handgun ammunition is, by definition under § 844(j), use of an explosive).

. Although quantity is not dispositive of our definitional analysis, we note appellant conspired to sell, and then stole two boxes and two crates of 5.56 mm ammunition, totaling 5000 rounds, each cartridge containing its corresponding amount of gunpowder or smokeless powder. Needless to say, the "explosive” nature of such an amount, in the aggregate, is evident.

.Complementing his certainty that 5.56 mm ammunition met the definition of "explosives” under R.C.M. 103(11), appellant also assured the military judge that his understanding comported with that of the United States military by acknowledging that a joint service regulation specifically labels small arms ammunition as "explosive ordnance.” See Army Reg. 75-14/Chief of Naval Operations Instr. 8027.1G/Marine Corps Order 8027.1D/Dep’t of Air Force Reg. 136-8, Interservice Responsibilities for Explosive Ordnance Disposal, para. 3.e (14 February 1992). This regulatory reference and its admission into evidence further reveals that appellant, a soldier, had "fair warning” and "notice” that the object of his crimes, 5.56 mm ammunition, constituted explosives. See United States v. Desposito, 704 F.3d 221, 229-30 (2d Cir.2013); see also United States v. Warner, 73 M.J. 1 (C.A.A.F.2013).

. The court granted the petition for grant of review of the following issue: "WHETHER A SINGLE AGREEMENT TO COMMIT THE SAME CRIME ON MULTIPLE OCCASIONS IS LEGALLY SUFFICIENT TO SUPPORT FINDINGS OF GUILTY ON TWO' SEPARATE CONSPIRACY CHARGES?”