KRAUSS, Judge,
dissenting in part:
“[I]t is not reasonable to construe § 844(j) as including within its ambit a single 9-millimeter cartridge, simply because it contains a small amount of gunpowder and can be fired from a gun.” United States v. Graham, 691 F.3d 153, 164 (2d Cir.2012) vacated on other grounds, — U.S. -, 133 S.Ct. 2851, 186 L.Ed.2d 902 (2013).
“[T]he serious and substantial nature of the other explosives listed suggests that the tiny amount of gunpowder used to fire a gun does not constitute ‘an explosive’ within the meaning of § 844(h)(1)” and thus the meaning of explosive in § 844(j). United States v. Thompson, 728 F.3d 1011, 1017 (9th Cir.2013) (adopting the reasoning in Graham, 691 F.3d at 160-61).
“[The Second Circuit] concluded that ammunition is not an explosive for purposes of 18 U.S.C. § 844(j) simply because it may be fired from a gun.” Thompson, 728 F.3d at 1026 n. 9 (Murguia, J., dissenting).
“Congress intended that, to the extent ‘practicable,’ trial by court-martial should resemble a criminal trial in a federal district court ... [UJnless there is reason not to do so, an interpretation of a provision of the Uniform Code should follow a well-established interpretation of a federal criminal statute concerning the same subject.” United States v. Valigura, 54 M.J. 187, 191 (C.A.A.F.2000).
The first goal of the 1984 Manual for Courts-Martial, in which the President adopted the federal definition of explosive, “was to conform to federal practice to the extent possible_” Rule for Courts-Martial [hereinafter R.C.M.] at A21-1.
The fact is that small arms ammunition is not regulated or prosecuted as an explosive in federal district court and there is nothing impracticable about enforcing the law as it is there, here in a court-martial. The federal district courts use the exact same definitions of explosive and firearm at play in courts-martial and reject the “syllogism” employed by the majority here. And while I share the sentiment that ammunition is dangerous and deserved of strict regulation, it is not treated as a dangerous explosive under the federal definition adopted by the President for use in courts-martial.[12]
Contrary to the majority’s characterization of the facts of this case, the parties did not merely “complement” the definition of explosive under R.C.M. 103 with reference to a regulation, they substituted and relied upon a regulatory definition to categorize small arms ammunition as an explosive in a fashion outside the scope of R.C.M. 103.
The majority here effects the same modification. It takes the definition of explosives meant for bombs and adds small arms ammunition. This is a job for the President not us. The President adopted the definitions of firearms and explosives under Chapters 12, Civil Disorders and 40, Importation, Manufacture, Distribution and Storage of Explosive Materials of Title 18 U.S.C., involving §§ 232 and 844, respectively. He recapitulated the definition of firearms under § 232(4) in R.C.M. 103(12). He combined the definitions of explosives under §§ 232(5) and 844(j) into one in R.C.M. 103(11). We are bound to interpret and apply that rule as it is, and leave additions to Congress or the Commander in Chief. The fact that the military judge, trial counsel and appellant all ultimately relied on a definition provided by an Army regulation, rather than R.C.M. 103(11), reveals the fact that they were either *707 unsure whether small arms ammunition was included in the Rule for Courts-Martial definition, or concluded that it was not, and their substitution of an inapplicable definition is itself sufficient basis to reject this plea on appeal.
Not a single federal case holds that small arms ammunition in and of itself is an explosive. The lack of eases is telling. It may have much to do with the fact that Congress promulgated a separate chapter, Chapter 44, Firearms, under Title 18 TJ.S.C. dealing specifically with firearms and ammunition. That chapter itself treats ammunition and explosives as if they are separate and distinct items. See, e.g., 18 U.S.C. §§ 921(a)(4) and (17), § 922 and § 924.[13]
Contrary to the majority’s read of United States v. Graham, the Second Circuit directly rejected the reasoning and arguments the majority here advances when it resolved that small arms ammunition, in and of itself, does not constitute an explosive as contemplated under 18 U.S.C. § 844(j).
To begin with, the majority mistakes the proposition that small arms ammunition configured in certain amounts and in a certain way might be used as an explosive for the proposition that a round of small arms ammunition is, as defined by R.C.M. 103(11), an explosive in and of itself.[14]
Though the majority’s ultimate holding seems to limit itself to the particular facts of this case, its conclusion cannot be reached without first concluding that a round of ammunition constitutes an explosive under R.C.M. 103(11) because it contains a bit of propellant powder.
As the Second Circuit concluded, “it is not reasonable to construe § 844(j) as including within its ambit a single 9-millimeter cartridge, simply because it contains a small amount of gunpowder and can be fired from a gun.” Graham, 691 F.3d at 164. Thus it explicitly rejects the reasoning that because the definition of firearm means any weapon designed to expel any projectile by the action of an explosive then small arms ammunition must be an explosive. Id.; see also Thompson, 728 F.3d at 1026. The definitions of explosive and firearm are the same under R.C.M. 103 as they are in the federal civilian system and in the cases relied upon by the majority. For example, the Second Circuit in Graham was dealing with the interplay between Title 18 U.S.C. §§ 844 and 924 which contain the same definitions of explosive and firearm at issue in this case.
The reason why R.C.M. 103 contains the same definitions as those under Title 18 U.S.C. is because, as the drafters of the 1984 Manual for Courts-Martial put it, the first goal of the 1984 Manual “was to conform to federal practice to the extent possible, except where the Uniform Code of Military Justice requires otherwise or where specific military requirements render such conformity impracticable” citing Article 36, UCMJ, which obligates the President to “apply the principles of law and the rules of evidence generally recognized in the trial of criminal eases in the United States district courts” as far as is practicable when prescribing rules. The drafter’s analysis of R.C.M. 103 makes plain that “whenever possible, [they] followed the definitions used in the United States Code.” Indeed, the only analysis of R.C.M. 103(11) and (12) provides reference to the statutes they copied and that the President adopted as definitions of explosives and firearms. The rule itself makes explicit reference to those statutes, review of which reveals that the R.C.M. simply combines elements of 18 U.S.C. § 232(4) and (5) and § 844(j) and ultimately completes the copy by referencing the rest of what those statutes cover.
As the Second Circuit again makes plain, the definition adopted by the President comes from anti-bombing statutes. Graham, *708 691 F.3d at 162. Small arms ammunition was not intended to be covered. See United States v. Gelb, 700 F.2d 875, 878-79 (2d Cir.1983). Gelb indicates that contemporaneous with the adoption of the statutory definitions at issue, the definition of explosive was understood to mean bombs and other high explosives. 799 F.2d at 878. This is what the court in Graham, means when it relies on the companion words of the explosives definition: not firearm, but dynamite and other high explosives, etc. Graham, 691 F.3d at 161.
This reliance on companion words verifying the purpose and parameters of the definition was most recently endorsed by the 9th Circuit in Thompson, recognizing that “the serious and substantial nature of the other explosives listed suggests that the tiny amount of gunpowder used to fire a gun does not constitute ‘an explosive’ within the meaning of § 844(h)(1)” and thus the meaning of explosive at issue here. 728 F.3d at 1017; see also id. at 1026 n. 9 (Murguia, J., dissenting) (where the dissenting judge even recognizes that the Second Circuit “concluded that ammunition is not an explosive for purposes of 18 U.S.C. § 844(j) simply because it may be fired from a gun”); United States v. Hepp, 656 F.2d 350, 351-52 (8th Cir.1981) (noting that the first category of explosives under § 844(j) is the same as that contemplated under § 841 of the same title, in other words, high explosives). Thus, the Second Circuit also directly rejects the majority’s reasoning by reference to § 844(g) and § 845 when it decided that “to the extent that the exemptions in § 844(g) and § 845 support the Government’s reading of § 844(j), we think that this support is outweighed by the contrary arguments from text and structure set out above.” Graham, 691 F.3d at 164.
The Fourth Circuit gives a somewhat contrary reading to § 844(j) and- offers similar reasoning to that of the majority here in that “the discharge of a handgun involves and requires an ‘explosive’ ” and that “ ‘shooting’ requires an explosion to expel a projectile from a firearm” in concluding that “the explosion of gunpowder inside a handgun when it is discharged constitutes a ‘use’ of an explosive” for the sentencing guideline at issue in that case. Davis, 202 F.3d at 219. But here again, the Fourth Circuit quite carefully and purposefully declines to hold or reason that small arms ammunition is an explosive in and of itself when it restricts its rationale to “[t]he ammunition in a loaded handgun.” Id. (emphasis added). In other words, though the Second Circuit rejects reliance on Davis, their reasoning is similar in acknowledging that small arms ammunition might be the proper subject of some use of explosive prosecution depending on its amount and configuration. Graham, 691 F.3d at 163-64. The same is true under the UCMJ. Small arms ammunition configured as a bomb is a proper basis for prosecution for the crime of threat or hoax designed or intended to cause panic or public fear under Article 134 but is not the proper basis for the offense of selling or stealing explosives under Articles 108 and 121. MCM, pt. IV, ¶ 109.
A distinction between explosives and small arms ammunition for purposes of prosecution is not unusual in the history of military justice. See, e.g., Hall, 3 M.J. at 970 (holding that blank rounds of M-16 ammunition were not highly explosive articles, though they contained gunpowder, and relying on a previous decision of that court holding that an order prohibiting the possession of explosives did not prohibit the possession of ammunition).
It is also worthwhile to note that, prior to 1984, Congress, successive Presidents and the military community were apparently happy demarking the maximum punishments for wrongful sale and theft of military property by value alone without any reference or concern for the explosive nature of that military property. See, e.g., Manual for Courts-Martial, United States (1969 Rev. ed.). It bears repeating that the adoption of the federal explosives definition came from a desire to conform to federal practice not from any articulated and particular military interest beyond that which was included in the definitions of firearms and explosives at the time.[15] *709 There is nothing impracticable about enforcing the value maximum punishments rather than that of explosives, in relation to small arms ammunition, absent an amendment to the rule. See UCMJ art. 36.
At the very worst for appellant, the definition of explosives is sufficiently ambiguous to warrant a narrow rather than expansive reading of the rule. Prior to its decision in Thompson, the Ninth Circuit declared the statutory definition of the term explosive as ambiguous and that it “does not have a clear meaning.” Gunderson v. Hood, 268 F.3d 1149, 1154-55 (9th Cir.2001). In circumstances such as these, it is not our function to aggrandize criminal liability but rather to limit it and permit Congress and the President to perform their respective functions. See United States v. Schelin, 15 M.J. 218, 220 (C.M.A.1983) (citing United States v. Enmons, 410 U.S. 396, 411, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973)); United States v. Rice, 71 M.J. 719, 725 (Army Ct.Crim.App.2012); United States v. McPherson, 68 M.J. 526, 529 (Army Ct.Crim.App.2009); see generally United States v. Hunter, 65 M.J. 399, 401 (C.A.A.F.2008) (ordinary rules of statutory construction apply to Rules for Courts-Martial).[16]
The facts of this case are also telling: (1) the stipulation of fact says nothing about explosives but details the value of the ammunition; (2) the military judge, prior to plea, required the government to provide “some sort of documentation listing 5.56 ammunition as an explosive”; (3) the trial counsel, defense counsel, appellant and judge initially relied, in part, on a definition of explosives from Army Regulation (AR) 75-14 that specifically includes “small arms ammunition” in its definition of explosive ordnance, in addition to the definition applicable to Articles 108 and 121, UCMJ; and, most importantly, (4) ultimately the judge and appellant relied exclusively on the AR 75-14 definition to establish appellant’s guilt. See Army Reg. 75-14, Interservice Responsibilities for Explosive Ordnance Disposal, para. 3.e (14 February 1992).[17]
■The ambiguity of the explosives definition perceived at appellant’s court-martial is manifest in the behavior of the military judge, trial and defense counsel and in accord with the ambiguity recognized in Gunderson. It appears that unable to resolve whether the ammunition alleged was included under R.C.M. 103(11), they looked elsewhere: before entry of pleas, the judge when describing the content of an R.C.M. 802 conference stated “I also informed counsel that the court required some sort of documentation as to the — some sort of documentation listing 5.56 millimeter ammunition as an explosive.” Then during the Care inquiry, the following exchange between the judge and appellant occurred:
MJ: I have appellate exhibit 4, Private Murphy, which is an excerpt from Army Regulation 75-14 that provides the definition of explosives. Do you agree that paragraph 3(e) encompasses small arms ammunition as explosives?
ACC: Yes, sir.
MJ: And is 5.56 millimeter ammunition an explosive in accordance with this Army Regulation?
ACC: Yes, that is correct.
(emphasis added).
This is plainly an error. There exist various regulatory definitions of explosive. The definition under AR 75-14 is provided for the purpose of that regulation, not prosecution under the UCMJ. For example, in addition to the Army Regulation 75 series, there is AR 385-63, which seems to treat ammunition and *710 explosives as distinct items. Army Reg. 385-63, Range Safety, (16 Apr. 2014). See also, e.g., 27 C.F.R. § 555.11 and § 555.141 (2014). The definition of explosive for the purposes of Articles 108 and 121, is that contained in R.C.M. 103. If the President wants to incorporate definitions from Army Regulations he may do so. He hasn’t, he adopted the statutory definitions discussed above.[18]
At a minimum, the record reveals, therefore, that appellant understood his liability as defined by a definition that does not apply to the offenses charged.[19] As such the plea is improvident. See United States v. Medina, 72 M.J. 148 (C.A.A.F.2013).
For this and the reasons above, I therefore respectfully dissent from that part of the majority’s decision.

. Indeed, 5.56 mm ammunition can be purchased at WalMart in quantity and at relatively cheap prices. Looking for Answers about Federal Ammunition Federal Cartridge 5.56mmx45mm 62gr FMJ Ball-Clipped Ammo Can, 420 Rounds? (30 May 2014), http://answers.walmart.com/ answers/1336/product/21638833/questions.htm. Grenades are, as yet, unavailable at that retail chain.

. Because the offenses in this case occurred in North Carolina, it is interesting to note that the North Carolina Court of Appeals held that small arms ammunition is not an explosive device when dealing with a similar issue. State v. Sherrod, 191 N.C.App. 776, 663 S.E.2d 470, 472-75 (2008).

. "We do not hold that ammunition generally (small arms or otherwise), which may conceivably be employed in quantities or in a manner far different from the single 9-millimeter cartridge discharged by Graham, cannot fall within § 844(j)’s definition of explosive, and thus trigger the § 844(h) enhancement." Graham, 691 F.3d at 164 (emphasis added).

. Reference to the military and government interest in applying a maximum punishment to explosives regardless of value because of their intrinsic danger begs the question. The issue is *709 not whether ammunition is dangerous, the issue is whether ammunition is either a firearm or an explosive as defined by R.C.M. 103(11) and (12).

. This is not a trivial matter. Though in this case appellant’s liability could have been easily fixed by allegation of the value of the ammunition, in general terms we are dealing with the difference between a maximum including ten years confinement and a maximum including only one year in confinement.

. Before resorting to AR 75-14 the military judge did twice define explosives as it is under R.C.M. 103(11), but never was there any discussion about gunpowder, smokeless powder, propellant powder or powder of any sort, in an individual round of ammunition or in the aggregate, serving as the basis for appellant's plea.

. Which is it — is small arms ammunition obviously included in R.C.M. 103(11) despite the fact that it is not mentioned or is explicit reference to small arms ammunition under AR 75-14 superfluous? The majority opinion seems to simultaneously hold to the contrary views that small arms ammunition, though not mentioned, is obviously included in R.C.M. 103(11) but that explicit inclusion of small arms ammunition in the definition of explosives ordnance under AR 75-14 is not superfluous.

. It cannot serve as notice to appellant that small arms ammunition is an explosive under R.C.M. 103(11) as that definition is limited to its terms and the referenced statutes upon which it is based.